**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ASSOCIATION OF AMERICAN PHYSICIANS & SURGEONS,
1601 N. Tucson Blvd., Suite 9,
Tucson, AZ 85716,

and

KATARINA VERRELLI,
Care of Law Office of Lawrence J. Joseph
1250 Connecticut Avenue, Suite 700-1A
Washington, DC 20036,
*individually and on behalf of all others similarly situated*,

Plaintiffs,

v.

ADAM B. SCHIFF, *in his individual capacity and his official capacity as a Member of Congress for the 28th Congressional District of California*,
2269 Rayburn House Office Building
Washington, DC 20515,

Defendant.

Civil Action No. 1:20-0106

## COMPLAINT

Plaintiffs Association of American Physicians and Surgeons ("AAPS") and Katarina Verrelli, individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), seek monetary damages, as well as declaratory and injunctive relief, based on the following allegations.

## NATURE OF THE ACTION

1. Plaintiffs sue defendant U.S. Rep. Adam B. Schiff (CA-28) for violations of the First Amendment by infringing on their free speech and association rights and those of the Class as defined below.

2. As set forth more fully in the Prayer for Relief in Paragraph 60, *infra*, Plaintiffs

seek the following relief:

(a) Such monetary damages as Plaintiffs shall prove at trial;

(b) An injunction requiring Defendant Schiff's unconstitutional conduct to cease and requiring him to remove any related materials – including, but not limited to, press releases – from his House.gov website and any personal websites and social media accounts and to post and maintain this Court's order on the websites and accounts – including, without limitation, House.gov and Twitter for @RepAdamSchiff – that Defendant Schiff used to further his unconstitutional conduct; and

(c) Declaratory relief that Defendant Schiff has violated Plaintiffs' First Amendment rights.

**PARTIES**

3. Plaintiff AAPS is a not-for-profit membership organization incorporated under the laws of Indiana and headquartered in Tucson, Arizona. AAPS was founded in 1943 to preserve the practice of private medicine, ethical medicine, and the patient-physician relationship. As a publisher of information related to the medical field, AAPS operates the AAPSonline.org website and publishes the *Journal of American Physicians and Surgeons* (available at jpands.org). AAPS's members include physicians nationwide in nearly all types of practices and specialties, but primarily in small practices; AAPS members also include those who support AAPS's mission but do not practice medicine. As set forth more fully in Paragraphs 15 and 25, *infra*, AAPS and its physician members are not "anti-vaccine" but rather favor informed consent based on disclosure of all relevant legal, medical, and economic information about that – *or virtually any* – issue.

4. Plaintiff Katarina Verrelli is a resident of the State of New York, who has suffered from limitations on her access on Facebook and Pinterest to information about the safety and efficacy of vaccination. In addition, she has been deprived of access on Amazon streaming services

to one or more documentaries about vaccination, including *Vaxxed* and *Shoot 'Em Up: The Truth About Vaccines*.

5. Defendant Schiff is a Member of Congress, representing the 28th Congressional District of California in the U.S. House of Representatives, and he holds a law degree from Harvard Law School.

**JURISDICTION AND VENUE**

6. This action arises out of Defendant's ongoing violations of the First Amendment nationwide and thus raises federal questions over which this Court has jurisdiction pursuant to 28 U.S.C. § 1331.

7. Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in the District of Columbia, where a substantial part of the events and omissions and harm alleged herein occurred. Venue is also proper in the District of Columbia pursuant to 28 U.S.C. § 1391(e)(e)(1)(A)-(B) because Defendant works here for much of the year.

8. An actual and justiciable controversy exists between Plaintiffs and Defendant.

**Ongoing Injuries to Plaintiffs**

9. AAPS's primary source of revenue derives from membership dues and donations, which AAPS solicits on its website. In addition to that monetary interest, attracting visitors to the AAPS website enables AAPS, its authors, and its readers to associate and to engage in speech on matters of mutual concern.

10. As set forth in Paragraph 27, *infra*, in February-March of 2019, AAPS published several articles related to vaccinations which generated significant traffic to the AAPS website. These articles accurately discuss important medical, economic, and legal issues about vaccines, but are not "anti-vaccine" as that phrase is used pejoratively by Defendant Schiff to mean "anti-science" and unscientific.

11. As a result of Defendant Schiff's actions and those taken in response to Schiff's actions by interactive computer services such as Google, Facebook, and Amazon – including, without limitation, the actions in Paragraphs 34-43, *infra* – the visits to the AAPS website declined significantly since March 2019, both in absolute terms and relative to the decline that would result from a story's losing its recency. For example, AAPS's non-vaccination content held steady during this period, and visits to AAPS's journal website *grew* from interactive computer services that have not initiated efforts to disfavor or "de-platform" internet material concerning the safety and effectiveness of vaccines (*i.e.*, visits from Google and Facebook combined declined approximately 73 percent from June through November of 2019, whereas visits using the search engines Bing and DuckDuckGo grew during the same period).

12. Defendant Schiff unconstitutionally coerced the censorship of interactive computer services with respect to vaccination-related material, and the interactive computer services took action including, without limitation, the actions set forth in Paragraphs 34-43, *infra*.

13. As indicated in Paragraph 4, *supra*, and Paragraph 45, *infra*, Defendant Schiff's actions have deprived Plaintiff Verrelli and the Class defined in Paragraph 45, *infra*, of convenient access to information on vaccinations from willing speakers on that subject.

14. By intentionally acting outside the committee structure in the legislative branch and the authorized enforcement authorities of the federal or state executive branches, Defendant Schiff abused his power and violated Plaintiffs' liberty interests protected by the Constitution's federalist structure, the separation-of-powers doctrine, and the Due Process Clause, all of which inflict procedural injuries that lower Article III's thresholds for the immediacy and redressability of Plaintiffs' First Amendment injuries.

15. By using the imprimatur of his congressional office to suppress First Amendment

activity on the subject of vaccinations, Defendant Schiff inflicted a reputational injury on AAPS by simplistically labeling all speech on vaccinations as either "pro-vaccination" or "anti-vaccination" with the latter meaning "anti-science" or simply unintelligent and uneducated and somehow unworthy of public access. In creating that arbitrary binary divide, Defendant Schiff ignores all the valid medical, economic, and legal points in AAPS's speech on vaccines. Defendant Schiff's false dichotomy does not recognize either the merits of AAPS's speech on the existence of positions – including AAPS's position in favor of informed discourse and informed consent – outside Defendant Schiff's simplistic binary division between pro-vaccination (good) and anti-vaccination (bad) information. While he is entitled to his opinion, his proposed censorship of other opinions is inimical to both the First Amendment and the scientific method.

16. The relief requested in Paragraph 60, *infra*, would redress Plaintiffs' injuries – at least in part – by removing Defendant Schiff's interference with Plaintiffs' continuing desires to engage in First Amendment activities. With Defendant Schiff's interference withdrawn and enjoined, Plaintiffs could contact interactive computer services – without Defendant Schiff's improper interference – to restore access to information on vaccinations that they seek to have publicly disseminated.

**Irreparable Harm and Inadequacy of Alternate Remedies**

17. Defendant Schiff's conduct injured Plaintiffs' First Amendment rights, *see* Paragraphs 9-13, *supra*, and the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Accordingly, Plaintiffs have suffered – and continue to suffer – irreparable harm.

18. Because this Court has jurisdiction as a threshold matter, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, provides this Court the power to "declare the rights and other legal relations of any interested party …, whether or not further relief is or could be sought." 28 U.S.C.

§ 2201; *accord* FED. R. CIV. P. 57 advisory committee note ("the fact that another remedy would be equally effective affords no ground for declining declaratory relief").

## STATUTORY BACKGROUND

19. Plaintiffs base this action on the First Amendment. In addition, this action relates in part to Section 230(c)(2)(A) of the Communication Decency Act of 1996 ("CDA"), PUB. L. NO. 104-104, title V, § 509, 110 Stat. 56, 137-39 (codified at 47 U.S.C. § 230(c)(2)(A), and the common law tort of abuse of power.

**First Amendment and Freedom of Speech**

20. The First Amendment protects the rights of free speech and association. Included within the right of free speech is a right to receive information from willing speakers. Under the First Amendment, Americans have the right to hear all sides of every issue and to make their own judgments about those issues without government interference or limitations.

21. Content-based restrictions on speech are presumptively unconstitutional, and courts analyze such restrictions under strict scrutiny.

**The Common Law Tort of Abuse of Governmental Power**

22. Courts recognize a common law tort of abuse of governmental power, which is also known as misfeasance or malfeasance in public office. *See*, *e.g.*, *Carter v. Carlson*, 447 F.2d 358, 366 (D.C. Cir. 1971), *abrogated in part on other grounds*, *Haynesworth v. Miller*, 820 F.2d 1245, 1260-62 (D.C. Cir. 1987); *Love v. King*, 784 F.2d 708, 713 (5th Cir. 1986); *cf. Roncarelli v. Duplessis*, [1959] S.C.R. 121, 140 (Canada); BLACK'S LAW DICTIONARY (11th ed. 2019) (defining misfeasance in public office as "[t]he tort of excessive, malicious, or negligent exercise of statutory powers by a public officer" that is "[a]lso termed malfeasance"). In this Circuit, *Carter* applied to all such "abuse, whether it is negligent or intentional in character," 447 F.2d at 366, but *Haynesworth* required that abuse be intentional (*i.e.*, more culpable than negligent) in some

circumstances. 820 F.2d at 1261 (requiring "something more than mere negligence to forge the 'affirmative link' between the constitutional infringement and the … conduct").

23. The common law abuse-of-power tort is a state-law variant of protections of liberty provided by the Equal Protection or Due Process provisions of the Fifth Amendment. *Deshaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989) ("the Due Process Clause … was intended to prevent government from abusing its power, or employing it as an instrument of oppression") (interior quotation marks omitted); *Bankers Life & Cas. Co. v. Crenshaw*, 486 U.S. 71, 83 (1988) ("arbitrary and irrational discrimination violates the Equal Protection Clause").

24. The elements of the tort of abuse of power are that (a) the defendant is a public officer; (b) the defendant exercised power as a public officer or public functions; (c) the defendant acted intentionally (or with bad faith or malice) to target someone or a group of people, acted with knowledge that he lacked the power to do the challenged act and that the act likely would injure the plaintiffs, or acted with reckless indifference with respect to the legality of the act and the outcome of the act; and (d) the defendant's abuse of power proximately caused the plaintiffs harm.

## FACTUAL BACKGROUND

**Plaintiff AAPS's History on Vaccines and Related Issues**

25. As a group with physicians and surgeons prominent in both its leadership and its membership, AAPS and its members have a long history of involvement with vaccines, both professionally and as an issue of public interest. As indicated in Paragraphs 3 and 15, *supra*, AAPS is not "anti-vaccine" in the simplistic for-or-against narrative pressed by Defendant Schiff. Rather, AAPS supports informed consent, based on an understanding of the full range of medical, legal, and economic considerations relevant to vaccination and any other medical intervention, which inevitably involves risks as well as benefits, as discussed in articles AAPS has published pertaining to this issue.

26. In the *Journal of American Physicians and Surgeons* (available at jpands.org), AAPS has published articles on vaccines for well over a decade, including – without limitation – the representative following articles:

- Jane M. Orient, M.D., *Mandating Vaccines: Government Practicing Medicine Without a License?* (1999);
- Franklin E. Payne, M.D., *Can Vaccines Actually Cause More Harm Than Good?* (2000);
- Kristine M. Severyn, R.Ph., Ph.D., *Profits, Not Science, Drive Vaccine Mandates* (2000);
- Harold E. Buttram, M.D., *Vaccine Scene 2000 – Review and Update* (2000);
- David A. Geier, B.A., Paul G. King, Ph.D. & Mark R. Geier, M.D., Ph.D., *Influenza Vaccine: Review of Effectiveness of the U.S. Immunization Program, and Policy Considerations* (2006);
- Brian S. Hooker, Ph.D. , P.E., *CDC Data Manipulation Exposed Four Years Later* (2017);
- Jane M. Orient, M.D., *Vaccine Controversies: the Case for Freedom and Informed Consent* (2019).

Given the ongoing interest in the vaccination topic, these articles – even ones written twenty years ago – have continued to draw visitors to the AAPS journal website, with several popular articles each attracting from just under 500 to almost 1,000 visits per month.

27. More recently, in February-March of 2019, AAPS published several popular pieces on vaccinations of the AAPS website (AAPSonline.org):

- Jane M. Orient, M.D., Executive Director, AAPS, *Statement on Federal Vaccine Mandates* (Feb. 26, 2019);
- Jane M. Orient, M.D., Sacrificing Freedom to Vaccination (Mar. 11, 2019);
- AAPS News March 2019 - Informed *Consent and Free Speech* (Mar. 15, 2019).

When published, these articles generated significant traffic to the AAPS website from interactive computer services, including – without limitation – Google, Facebook, Amazon, and Twitter.

**Plaintiff Verrilli's Interest in Vaccination**

28. Plaintiff Verrilli has long been interested in accessing full information about vaccination and using the internet for accessing information about safety and efficacy of vaccination.

**Defendant Schiff's History on Vaccines and Related Issues**

29. The House Committee on Energy and Commerce – specifically its Subcommittee on Health – is the committee having jurisdiction over issues related to vaccines. Defendant Schiff did not serve on that Committee in the 114th or 115th Congresses and does not serve on it in the current (116th) Congress.

30. None of Defendant Schiff's committee assignments in the current Congress have jurisdiction over the issue of vaccines, and none of Defendant Schiff's committee assignments in the 114th or 115th Congresses had jurisdiction over the issue of vaccines.

**Defendant Schiff's Hearing on CDA § 230**

31. On June 13, 2019, the House Intelligence Committee chaired by Defendant Schiff held a hearing on the national and election security risks of technology that allows the creation of "fake" videos. At the outset of the hearing, Defendant Schiff challenged the immunity that interactive computer services have under Section 230 of the CDA and asked panelists if Congress should make changes to that immunity.

32. On information and belief, Defendant Schiff intended the hearing on CDA § 230 to put interactive computer services such as Google, Facebook, Amazon, and Twitter on notice that they would need to comply with Defendant Schiff's position or risk his undertaking legislative action against CDA § 230 – which those interactive computer services regard as valuable – and

other issues of importance to interactive computer services such as antirust legislation in their industry.

33. On information and belief, which likely could be proved with an opportunity for discovery, interactive computer services – including, without limitation, Google, Facebook, Amazon, and Twitter – understood the hearing on CDA § 230 to require acceding to Defendant Schiff's wishes on other fronts, such as the actions against his disfavored material on vaccinations on their platforms. Defendant Schiff both helped create and then took advantage of this climate of fear to coerce interactive computer services to censor content that he opposes.

**Defendant's Interference with Plaintiffs' First Amendment Activities and Rights**

34. On or about February 14, 2019, Defendant Schiff contacted leading interactive computer services, including – without limitation – Google, Facebook, and Amazon, to encourage them to use their platforms to prevent what Defendant Schiff asserted to be inaccurate information on vaccines. Defendant Schiff then arranged for posting a press release announcing and republishing the Google and Facebook letters on the House.gov website. *Schiff Sends Letter to Google, Facebook Regarding Anti-Vaccine Misinformation* (Feb. 14, 2019) (available at https://schiff.house.gov/news/press-releases/schiff-sends-letter-to-google-facebook-regarding-anti-vaccine-misinformation, last visited Jan. 15, 2020)

35. On or about March 1, 2019, Defendant Schiff contacted Amazon to encourage it to use its platforms to prevent what Defendant Schiff asserted to be inaccurate information on vaccines. Defendant Schiff posted a press release announcing and republishing the Amazon letter on the House.gov website: *Schiff Sends Letter to Amazon CEO Regarding Anti-Vaccine Misinformation* (Mar. 1, 2019) (available at https://schiff.house.gov/news/press-releases/schiff-sends-letter-to-amazon-ceo-regarding-anti-vaccine-misinformation, last visited Jan. 15, 2020).

36. On or about March 1, 2019, Defendant Schiff tweeted about his letter to Amazon

and stated that "Every online platform … must act responsibly and ensure that they [sic] do not contribute to this growing public health catastrophe."

37. On or about March 7, 2019, Defendant Schiff posted a press release on the House.gov website to include the following responses to Defendant Schiff's letters dated February 14, 2019:

- "We have put a lot of effort into curbing misinformation in our products – from better Search ranking algorithms, to improving our ability to surface authoritative content, to tougher policies against monetization of harmful or dangerous content. Under YouTube's Advertiser-Friendly Content Guidelines, we are and have been demonetizing anti-vaccination content under our longstanding harmful or dangerous advertising policy" (quoting Karan Bhatia, Vice President of Global Public Policy and Government Affairs at Google).
- "Our approach … is to reduce the spread of inaccurate information about vaccines by reducing its distribution in News Feed, removing groups and pages that promote misinformation from recommendation surfaces, and providing authoritative information to people who might encounter it" (quoting Kevin Martin, Vice President of U.S. Public Policy at Facebook).

The press release was published at https://schiff.house.gov/news/press-releases/schiff-receives-official-responses-from-google-facebook-regarding-anti-vaccine-misinformation (last visited Jan. 15, 2020).

38. Within 24 hours of Defendant Schiff's letter to Amazon dated March 1, 2019, Amazon removed from its platform for streaming videos the popular videos *Vaxxed* and *Shoot 'Em Up: The Truth About Vaccines*. This deprives members of the public, including Plaintiff Verrelli,

from convenient access to those videos which they had prior to Defendant Schiff's letter.[1]

39. On August 9, 2019, Amazon suddenly announced AAPS's termination from the Amazon Associates Program, which by its own description is one of the largest affiliate networks in the world to enable website owners to earn commissions based on their traffic. Amazon terminated AAPS on the pretext of AAPS having stated on the AAPS website that visitors can support AAPS by shopping on Amazon through AAPS's links. AAPS had included that language for the almost 10 years that AAPS participated in the Amazon Associates Program and the language that AAPS used on its website is ubiquitous across the internet for participants in Amazon's Associates Program (*i.e.*, Amazon's rationale and timing suggest either selective enforcement or an ulterior motive). Amazon's cancelation notice indicated that "[i]n limited cases this closure may be appealable," but the link provided to AAPS indicated "[n]o information available" in AAPS's case.

40. Pursuant to a new policy announced in May of 2019, Twitter, a target of Schiff's coercion, now includes a pro-government disclaimer placed above search results for an AAPS article on vaccine mandates:

**Know the Facts**

> To make sure you get the best information on vaccination, resources are available from the US Department of Health and Human Services.

41. The implication of this disclaimer is that if information is not on a government website, then somehow it is not "the best," i.e., it is less credible, which detracts from AAPS's First Amendment right to speak without this disclaimer.

[1] https://www.buzzfeednews.com/article/carolineodonovan/amazon-removes-anti-vaccine-videos (viewed Jan. 15, 2020).

42. On Facebook, another target of Schiff's coercion campaign, pursuant to new restrictions announced March 7, 2019, and released in September of 2019, a search for the URL to an AAPS article on vaccines now produces search results containing two World Health Organization links, a National Institutes of Health link, and a link for the Centers for Disease Control and Prevention. Prior to the implementation of this new restriction, such a search would lead directly to the AAPS article.

43. Because of the dominant market power of Google, Facebook, Amazon, and Twitter, their actions against AAPS's vaccine-related materials resulting from Defendant Schiff's coercion has significantly depressed the internet traffic to the AAPS website, as explained in Paragraphs 9-12, *supra*.

44. Plaintiffs file this action to seek to end the ongoing discrimination against their speech and association on a topic of public concern and to seek damages for past violations.

**CLASS ACTION ALLEGATIONS**

45. Plaintiff Verrelli brings these claims on behalf of a class (the "Class") defined as follows: all members of the public who seek information, including journal articles and documentaries, about the safety and efficacy of vaccination.

46. **Numerosity. FED. R. CIV. P. 23(a)(1).** The Class members are so numerous that joinder of all is impractical. The Class members total millions of people.

47. **Existence and Predominance of Common Questions of Law and Fact. FED. R. CIV. P. 23(a)(2).** Common questions of law and fact exist and predominate as to all members of the Class. The common legal and factual questions include whether there has been an infringement on the First Amendment rights of members of the Class by Defendant Schiff.

48. **Typicality. FED. R. CIV. P. 23(a)(3).** Plaintiff Verrelli's claims are typical of the claims of each Class member. Plaintiff Verrilli has the same claims for injunctive relief that she

seeks for all the Class members.

49. **Adequacy. FED. R. CIV. P. 23(a)(4).** Plaintiff Verrilli is an adequate representative of the Class. Her interests are aligned with, and are not antagonistic to, the Class. Plaintiff Verrilli and her counsel intend to prosecute this action vigorously on behalf of the Class, and her counsel will fairly and adequately protect the interests of the members of the Class.

50. **Injunctive Relief Appropriate. FED. R. CIV. P. 23(b)(2).** Defendant Schiff's conduct as alleged herein applies generally to the members of the Class, such that final injunctive relief is appropriate with respect to the Class.

51. **Predominance and Superiority. FED. R. CIV. P. 23(b)(3).** Questions of law and fact common to the Class predominate over questions affecting only individual members, and thus a class action is superior to other available methods for adjudication. Individual litigation would prove burdensome and expensive for the complex issues presented. It would be virtually impossible for Class members individually to redress effectively the wrongs done to them. Even if Class members could afford such individual litigation, it would be an unnecessary, time-consuming burden on the courts. A class action would benefit litigants and the Court by resolving individual claims in one proceeding, without the risk of inconsistent results.

## COUNT I
## FIRST AMENDMENT

52. Plaintiffs incorporate Paragraphs 1-51 and 55-59 as if fully set forth herein.

53. Misusing the power of his position to coerce third-party interactive computer services – including, without limitation, Google, Facebook, and Amazon – Defendant Schiff intentionally influenced and caused interactive computer services to discriminate against AAPS based on the content of AAPS's speech, knowing the effect that such discrimination would have on the affected publishers' speech and association rights and on the Class's ability to conveniently

access information about vaccination.

54. For the foregoing reasons, Defendant Schiff's actions violate the First Amendment's protections of speech and expressive association of Plaintiffs.

**COUNT II**
**ABUSE OF POWER**

55. Plaintiffs incorporate Paragraphs 1-54 as if fully set forth herein.

56. Upon information and belief, Defendant Schiff knowingly acted in a public capacity as a public officer to injure people disseminating and seeking access to information protected by the First Amendment, knowing that these people – including AAPS and the Class – would suffer not only First Amendment injuries but also monetary injury.

57. Defendant Schiff abused his position by making an implied threat against interactive computer services such as Google and Facebook to "de-platform" AAPS and others engaged in lawful expression and association protected by the First Amendment, knowing that those actions would injure the targets of their actions.

58. Plaintiffs have suffered monetary, expressive, and associational injury directly caused by Defendant Schiff's actions.

59. For the foregoing reasons, Defendant Schiff's actions constitute an abuse of power.

**PRAYER FOR RELIEF**

60. WHEREFORE, Plaintiffs AAPS and Verrelli, individually and on behalf of all others similarly situated, respectfully ask this Court to grant the following relief:

A. Determine that this action may proceed as a class action under Rule 23(b)(2), (b)(3), and/or (c)(4) of the Federal Rules of Civil Procedure.

B. Certify a plaintiff class as defined in Paragraph 45, *supra*.

C. Enter judgment in favor of Plaintiffs AAPS and Verrelli, individually and on behalf of all

others similarly situated, and against Defendant Schiff on all counts.

D. Pursuant to 28 U.S.C. §§ 1331, 1367, and 2201-2202, FED. R. CIV. P. 57, and this Court's equitable powers, issue a Declaratory Judgment that Defendant Schiff has violated Plaintiffs' First Amendment rights.

E. Pursuant to 28 U.S.C. §§ 1331, 1367, and 2201-2202, FED. R. CIV. P. 57, and this Court's equitable powers, issue an Injunction providing that

(i) Defendant Schiff shall cease contacting private or public entities or persons to request that those entities or persons take any action against publishers of vaccine-related information; and

(ii) Defendant Schiff shall remove any related materials – including, but not limited to, press releases – from Defendant Schiff's House.gov website and any personal websites;

(iii) Defendant Schiff shall post or link to this Court's order under an announcement approved by this Court on all internet and social media websites and accounts that Defendant Schiff improperly utilized to coerce the censorship of vaccination-related material.

F. Pursuant to 28 U.S.C. §§ 1331, 1367, and 2201-2202 and this Court's equitable powers, damages in the amount to be proved at trial or by dispositive motion;

G. Award Plaintiffs pre-judgment and post-judgment interest on any damage awards.

H. Pursuant to 28 U.S.C. § 2412 and any other applicable provisions of law or equity, award Plaintiffs' costs and reasonable attorneys' fees.

I. Such other relief as may be just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs AAPS and

Verrelli, individually and on behalf of all others similarly situated, demand a trial by jury on all issues so triable.

Dated: January 15, 2020

Respectfully submitted,

/s/ Lawrence J. Joseph,

Lawrence J. Joseph, DC Bar No. 464777
Law Office of Lawrence J. Joseph
1250 Connecticut Ave, NW, Suite 700-1A
Washington, DC 20036
Tel: 202-355-9452
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com

Andrew L. Schlafly
General Counsel
Association of American Physicians & Surgeons
939 Old Chester Rd.
Far Hills, NJ 07931
Tel: 908-719-8608
Fax: 908-934-9207
Email: aschlafly@aol.com

*Counsel for Plaintiffs*