**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| Ass'n of American Physicians & Surgeons, *et al.*, | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 1:20-0106-RC |
| Adam B. Schiff, *in his individual capacity and his official capacity as a Member of Congress for the 28th Congressional District of California*, | ) ) ) ) | |
| Defendant. | ) ) | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**</u>

Andrew L. Schlafly
General Counsel
Association of American Physicians & Surgeons
939 Old Chester Rd.
Far Hills, NJ 07931
Tel: 908-719-8608
Fax: 908-934-9207
Email: aschlafly@aol.com

Lawrence J. Joseph, DC Bar No. 464777
Law Office of Lawrence J. Joseph
1250 Connecticut Ave, NW, Suite 700-1A
Washington, DC 20036
Tel: 202-355-9452
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com

*Counsel for Plaintiffs*

# **TABLE OF CONTENTS**

Table of Contents ................................................................................................. i

Table of Authorities ......................................................................................... iii

Introduction .........................................................................................................1

Argument ..............................................................................................................1

I.    This court has jurisdiction for Plaintiffs' claims. ..................................1

    A.    Plaintiffs have standing..........................................................................1

        1.    Plaintiffs have suffered an injury in fact. ................................2

            a)    Plaintiffs suffer monetary and First Amendment injuries. ......................................................................................2

            b)    Plaintiffs suffer the injury of unauthorized interference. ..............................................................................3

        2.    Rep. Schiff caused Plaintiffs' injuries. ....................................4

        3.    This Court can redress Plaintiffs' injuries.................................6

    B.    The Speech and Debate Clause does not insulate Rep. Schiff's *ultra vires* conduct. .....................................................................7

        1.    The implied legislative power of inquiry is not unlimited..........................................................................................7

        2.    Individual Members do not share in the House's full implied power of inquiry.............................................................9

        3.    Defendant's actions fall outside the scope of the Speech or Debate Clause. ..............................................................11

            a)    Defendant did not have a sufficient legislative purpose....................................................................................11

            b)    Defendant has an impermissible regulatory purpose....................................................................................12

            c)    Defendant violated constitutional rights.....................12

    C.    Sovereign immunity is coextensive with the Speech and Debate Clause. ......................................................................................13

    D.    The FTCA does not bar this action ...................................................14

        1.    FTCA exhaustion is not required if the FTCA does not apply...........................................................................................14

        2.    The FTCA's exclusivity provisions do not bar Plaintiffs' claims................................................................................15

    E.    This Court can fashion *Bivens*-style relief. ....................................18

      1.     This Court's common-law powers differ from other federal court's Article III powers. ........................20

      2.     Rep. Schiff's attempt to minimize this Court's powers must fail. ........................21

II.    Plaintiffs state claims on which this Court could grant relief. ........................22

    A.    Plaintiffs state a claim for abuse of power. ........................22

      1.     Rep. Schiff does not credibly dispute this Court's common-law power to create a tort or tort remedy or the need to do so here. ........................23

      2.     This Court could create an abuse-of-power tort for federal officers. ........................24

    B.    Plaintiffs state a claim under the First Amendment. ........................25

    C.    Rep. Schiff's actions inflict procedural and structural injuries. ........................26

Conclusion ........................27

# TABLE OF AUTHORITIES

## CASES

*Altria Group, Inc. v. Good,*
  555 U.S. 70 (2008)...........................................................................................16

*Baltimore Sun Co. v. Mayor & City Council of Baltimore,*
  359 Md. 653, 755 A.2d 1130 (Md. 2000).......................................................21

*Bell v. Hood,*
  327 U.S. 678 (1946)................................................................................. 18-19

*Bivens v. Six Unknown Fed'l Narcotics Agents,*
  403 U.S. 388 (1971)................................................................................. 18-21

*Block v. Meese,*
  793 F.2d 1303 (D.C. Cir. 1986).......................................................................4

*Broadrick v. Oklahoma,*
  413 U.S. 601 (1973)..........................................................................................5

*Brown & Williamson,*
  62 F.3d 408 (D.C. Cir. 1995).........................................................................10

*Chamber of Commerce of the United States v. Reich,*
  74 F.3d 1322 (D.C. Cir. 1996).......................................................................21

*Civil Aeronautics Bd. v. Delta Air Lines, Inc.,*
  367 U.S. 316 (1961)........................................................................................12

\* *Clark v. Associated Retail Credit Men,*
  105 F.2d 62 (D.C. Cir. 1939).................................................................20, 25

*Columbia Broadcasting System, Inc. v. U.S.,*
  316 U.S. 407 (1942)..........................................................................................3

*Cooper Indus., Inc. v. Aviall Serv., Inc.,*
  543 U.S. 157 (2004)........................................................................................22

*Corr. Servs. Corp. v. Malesko,*
  534 U.S. 61 (2001)..........................................................................................18

\* *Davis v. Passman,*
  442 U.S. 228 (1979)............................................................... 13-14, 23-24

*Elrod v. Burns,*
  427 U.S. 347 (1976)..........................................................................................2

*Erie Railroad Co. v. Tompkins,*
  304 U.S. 64 (1938)..................................................................................20, 25

*Ex parte Young,*
  209 U.S. 123 (1908)....................................................................... 13, 15-16, 22

*Exxon Corp. v. Fed'l Trade Comm'n,*
　589 F.2d 582 (D.C. Cir. 1978) .................................................................8

*FAIC Securities, Inc. v. United States,*
　768 F.2d 352 (D.C. Cir. 1985) .................................................................3

*Freedom Watch, Inc. v. Google, Inc.,*
　368 F. Supp. 3d 30 (D.D.C. 2019) ...........................................................2

*Freedom Watch, Inc. v. Google, Inc.,*
　No. 19-7030, 2020 U.S. App. LEXIS 16948 (D.C. Cir. May 27, 2020) ........................3, 7

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
　528 U.S. 167 (2000) ................................................................................6

*Ganem v. Heckler,*
　746 F.2d 844 (D.C. Cir. 1984) ................................................................21

*Gravel v. United States,*
　408 U.S. 606 (1972) ................................................................................9

*Haitian Refugee Center v. Gracey,*
　809 F.2d 794 (D.C. Cir. 1987) .................................................................3

*Hall v. Macco Corp.,*
　198 Cal. App. 2d 415 (Cal. Ct. App. 1961) .............................................6

*Hernandez v. Mesa,*
　137 S.Ct. 2003 (2017) .............................................................................1

\* *Hernandez v. Mesa,*
　140 S.Ct. 735 (2020) ........................................................................ 19-21

*Holmes v. Amerex Rent-A-Car,*
　710 A.2d 846 (D.C. 1998) ................................................................. 24-25

*Horne v. Flores,*
　557 U.S. 433 (2009) ................................................................................2

*Jefferies v. District of Columbia,*
　917 F. Supp. 2d 10 (D.D.C. 2013) ..................................................... 23-24

*Jewish War Veterans v. Gates,*
　506 F.Supp.2d 30 (D.D.C. 2007) ...........................................................10

*Kendall v. United States  ex rel. Stokes,*
　37 U.S. (12 Pet.) 524 (1838) ..................................................................20

*Law Offices of Seymour M. Chase, P.C. v. F.C.C.,*
　843 F.2d 517 (D.C. Cir. 1988) .................................................................3

*Loumiet v. United States,*
　828 F.3d 935 (D.C. Cir. 2016) ...............................................................15

*Lujan v. Defenders of Wildlife,*
　504 U.S. 555 (1992) ................................................................ 1-2, 4, 6, 16, 26

*McGrain v. Daugherty*,
   273 U.S. 135 (1927)................................................................................7

\*    *McSurely v. McClellan*,
   553 F.2d 1277 (D.C. Cir. 1976) (*en banc*).........................................9-12, 24

*Minneci v. Pollard*,
   565 U.S. 118 (2012)...............................................................................16

*Mostyn v. Fabrigas*,
   98 Eng. Rep. 1021 (K.B. 1774) .............................................................21

*N. Cal. Power Agency v. Fed. Power Comm'n*,
   514 F.2d 184 (D.C. Cir. 1975).................................................................12

*Nat'l Ass'n of Home Builders v. Defenders of Wildlife*,
   551 U.S. 644 (2007)...........................................................................16, 20

*Osborn v. Visa Inc.*,
   797 F.3d 1057 (D.C. Cir. 2015) ...............................................................2

*Pentagen Tech. Int'l, Ltd. v. Comm. on Appropriations*,
   20 F.Supp.2d 41 (D.D.C. 1998) .........................................................10-11

*People for the Ethical Treatment of Animals, Inc. v. Gittens*,
   414 F.3d 23 (D.C. Cir. 2005)...................................................................25

*Raines v. Byrd*,
   521 U.S. 811 (1997)..................................................................................8

*Safeco Ins. Co. of Am. v. Burr*,
   551 U.S. 47 (2007)....................................................................................6

*Schlesinger v. Councilman*,
   420 U.S. 738 (1975)...........................................................................16, 20

*Schweiker v. Chilicky*,
   487 U.S. 412 (1988)................................................................................18

*Shays v. FEC*,
   414 F.3d 76 (D.C. Cir. 2005) ...................................................................3

\*    *Simmons v. Himmelreich*,
   136 S.Ct. 1843 (2016) .......................................................................17-18

*Tex. Indus. v. Radcliff Materials*,
   451 U.S. 630 (1981)................................................................................25

*Tozzi v. HHS*,
   271 F.3d 301 (D.C. Cir. 2002) .................................................................4

*Trump v. Mazars USA, LLP*,
   Nos. 19-715, 19-760, 2020 U.S. LEXIS 3553 (July 9, 2020)................7, 11-12

*United States v. Biaggi*,
   853 F.2d 89 (2d Cir. 1988).............................................................10, 12, 14

*United States v. Brewster*,
    408 U.S. 501 (1972)............................................................................11

*United States v. Smith*,
    499 U.S. 160 (1991)..................................................................... 17-18

*United States v. Students Challenging Regulatory Agency Procedures*,
    412 U.S. 669 (1973)..............................................................................2

*Verizon Md. Inc. v. Pub. Serv. Comm'n of Maryland*,
    535 U.S. 635 (2002)......................................................................16, 17

*Village of Arlington Heights v. Metro. Housing Development Corp.*,
    429 U.S. 252 (1977).........................................................................2, 4

*Waters v. Churchill*,
    511 U.S. 661 (1994)..................................................................... 21-22

\*   *Watkins v. United States*,
    354 U.S. 178 (1957)................................................. 5, 8, 11-13, 17, 24

*Whole Woman's Health v. Hellerstedt*,
    136 S.Ct. 2292 (2016).......................................................................22

*Wooley v. Maynard*,
    430 U.S. 705 (1977)............................................................................2

## <u>STATUTES</u>

U.S. CONST. art I, § 6, cl. 1 ................................................................. *passim*

U.S. CONST. art. III ................................................................1-4, 19-20, 26

U.S. CONST. amend. I ........................................................................ *passim*

Gonzalez Act,
    10 U.S.C. §1089.................................................................................17

28 U.S.C. § 1331 .............................................................................. 18-20

28 U.S.C. § 1367(a)................................................................................20

28 U.S.C. § 2401(b) ................................................................................15

Federal Tort Claims Act,
    28 U.S.C. §§ 2671-2680 ................................................................ 14-20

28 U.S.C. § 2675(a)................................................................................14

28 U.S.C. § 2679(b) ................................................................................17

\*   28 U.S.C. § 2679(b)(1) ..................................................................... 16-17

\*   28 U.S.C. § 2679(b)(2)(A)........................................................................17

28 U.S.C. § 2680 ............................................................................... 15-16

28 U.S.C. § 2680(a) ........................................................................... 14-17

28 U.S.C. § 2680(a)-(n) ....................................................................................... 15-16

District of Columbia Court Reorganization Act of 1970,
    PUB. L. NO. 91-358, 84 Stat. 605 (1970) ............................................. 20-21, 25

\*    Act of Feb . 27. 1801, § 5; 2 Stat. 103, 106 .............................................20

## **LEGISLATIVE HISTORY**

H.R. REP. NO. 94-1656, at 15-16, *reprinted in* 1976 U.S.C.C.A.N. 6121, 6136 .........................21

## **OTHER AUTHORITIES**

A.B.A. Section of Admin. Law & Regulatory Practice, *A Blackletter Statement of
    Federal Administrative Law*, 54 ADMIN. L. REV. 1 (2002).................................................13

Louis L. Jaffee, *The Right to Judicial Review I,* 71 HARV. L. REV. 401 (1958)..........................13

Henry P. Monaghan, Third Party Standing, 84 COLUM. L. REV. 277 (1984) .................................3

**INTRODUCTION**

Plaintiffs Association of American Physicians and Surgeons ("AAPS") and Katarina Verrelli (collectively, "Plaintiffs") respectfully oppose the motion to dismiss ("EFC #19) filed by the defendant, U.S. Congressman Adam B. Schiff.("Rep. Schiff"). For purposes of a motion to dismiss, this Court assumes the well-pleaded facts of the complaint, *Hernandez v. Mesa*, 137 S.Ct. 2003, 2005 (2017), which Plaintiffs incorporate by reference.

**ARGUMENT**

**I.      THIS COURT HAS JURISDICTION FOR PLAINTIFFS' CLAIMS.**

Rep. Schiff raises five arguments against this Court's jurisdiction to hear this case. None of the arguments have merit.

**A.      Plaintiffs have standing.**

Rep. Schiff first challenges Plaintiffs' standing to sue. Article III standing presents the tripartite test of whether the party invoking a court's jurisdiction raises an "injury in fact" under Article III: (a) a legally cognizable injury (b) that is both caused by the challenged action and (c) redressable by a court. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561-62 (1992). The task of establishing standing varies, depending "considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue." *Id* at 561. If so, "there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Id.* at 562. If not, standing may depend on third-party action:

> When … a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*, much more is needed. In that circumstance, causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction – and perhaps on the response of others as well.

*Id.* (emphasis in original). Here, Plaintiffs can assert both first-party and third-party injuries, with the showing for standing easier for the first-party injuries.

### 1.     Plaintiffs have suffered an injury in fact.

An "injury in fact" is "an invasion of a legally protected interest which is … concrete and particularized" to that plaintiff. *Id.* at 560. A plaintiff's burden to demonstrate standing "grows heavier at each stage of the litigation," and, at the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Osborn v. Visa Inc.*, 797 F.3d 1057, 1064 (D.C. Cir. 2015). Only one plaintiff requires standing, *Horne v. Flores*, 557 U.S. 433, 446 (2009), although to be certified as a class representative a plaintiff would need standing for the class claims.

### a)     Plaintiffs suffer monetary and First Amendment injuries.

All Plaintiffs' alleged injuries qualify as "legally protected interests" for purposes of Article III. *Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp. 3d 30, 36 (D.D.C. 2019), *aff'd*, No. 19-7030, 2020 U.S. App. LEXIS 16948, at *3 (D.C. Cir. May 27, 2020) (internet traffic and revenue); *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 689 n.14 (1973) (discussing standing for "$5 fine and costs"); *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (loss of First Amendment rights); *Wooley v. Maynard*, 430 U.S. 705, 717 (1977) (Article III injury for compelled speech); *Village of Arlington Heights v. Metro. Housing Development Corp.*, 429 U.S. 252, 263 (1977) (freedom from "arbitrary or irrational [government] actions"). The only question for purposes of Plaintiffs' injury in fact is whether the alleged injuries are concrete and non-speculative.

Although Rep. Schiff argues that Plaintiffs' monetary and internet-traffic claims are speculative, they are not. AAPS's website traffic is down significantly from the dominant interactive computer services (namely, Facebook and Google) that Rep. Schiff contacted, despite

how its traffic is up slightly from interactive computer services (namely, Bing and DuckDuckGo) that Rep. Schiff has not affected. *Compare* First Am. Compl. at 4 *with id.* at 22. In other words, traffic improved at the smaller sites where Rep. Schiff was not involved, but it declined precipitously at the larger ones where he was involved. Obviously, it would be preferable from a business standpoint to have increased traffic from the dominant sites because they represent almost ten times more market share: "courts routinely credit assertions founded on basic economic logic in upholding standing." *Shays v. FEC*, 414 F.3d 76, 90-91 (D.C. Cir. 2005) (interior quotations omitted). As the D.C. Circuit recently held, suppression of internet traffic and the resulting revenue provides Article III standing. *Freedom Watch, Inc. v. Google Inc.*, No. 19-7030, 2020 U.S. App. LEXIS 16948, at *3 (D.C. Cir. May 27, 2020) (citing *Freedom Watch, Inc. v. Google*, 368 F.Supp.3d 30, 36 (D.D.C. 2019)). Rep. Schiff's arguments to the contrary are inapposite at the pleading stage.

**b)** <u>**Plaintiffs suffer the injury of unauthorized interference.**</u>

By acting unlawfully to interfere with Plaintiffs' ability to contract and to negotiate with interactive computer services, Rep. Schiff inflicts a *first-party injury* on Plaintiffs. *See* Henry P. Monaghan, Third Party Standing, 84 COLUM. L. REV. 277, 299 (1984) ("a litigant asserts his own rights (not those of a third person) when he seeks to void restrictions that directly impair his freedom to interact with a third person who himself could not be legally prevented from engaging in the interaction"); *FAIC Securities, Inc. v. United States,* 768 F.2d 352, 360 n.5 (D.C. Cir. 1985) (*citing* Monaghan); *Columbia Broadcasting System, Inc. v. U.S.,* 316 U.S. 407, 422-23 (1942) (broadcasters had standing to challenge regulations that altered the terms on which third-party station owners could interact with broadcasters); *Law Offices of Seymour M. Chase, P.C. v. F.C.C.,* 843 F.2d 517, 524 (D.C. Cir. 1988) (discussing cases); *Haitian Refugee Center v. Gracey,* 809 F.2d 794, 811 n.13 (D.C. Cir. 1987) (no "independent need.... to establish third

party standing since the legal right they asserted – the right not to be injured by unauthorized agency action – was their own"). Even a document that does not impose legal restrictions can be an impediment – such as an "influential government document" – that interferes with Plaintiffs' free negotiations with the interactive computer services. *See*, *e.g.*, *Block v. Meese*, 793 F.2d 1303, 1309 (D.C. Cir. 1986); *Tozzi v. HHS*, 271 F.3d 301, 307-10 (D.C. Cir. 2002). Like the developer in *Arlington Heights*, Plaintiffs "[c]learly… me[e]t the constitutional requirements, and… therefore ha[ve] standing to assert [their] own rights," the "[f]oremost" of which is the "right to be free of arbitrary or irrational [agency] actions." *Arlington Heights*, 429 U.S. at 263.

Significantly, Plaintiffs' unauthorized-interference injuries are first-party injuries *caused* directly by Rep. Schiff's entry into this field. As such, this Court easily could *redress* the injury with an injunction directing Rep. Schiff to withdraw his guidance and exhortations to interactive computer services. While that would not undo the past, it would allow Plaintiffs prospectively to negotiate with the interactive computer services without Rep. Schiff's ongoing interference. That suffices for Article III. *Defenders of Wildlife,* 504 U.S. at 562.

### 2. Rep. Schiff caused Plaintiffs' injuries.

Rep. Schiff denies that he caused the decline in AAPS's revenues and in Plaintiffs' First Amendment activities, not only for the companies he contacted by also for the similar companies that Plaintiffs have not alleged him to have contacted. *See* Def.'s Memo. at 12-18. In sum, he argues that Plaintiffs' injuries flow from the actions of third parties not before the Court. *Id.* This Court should reject Rep. Schiff's attempt to evade the intended results of his efforts for several reasons. Alternatively, the Court could accept Plaintiffs' pleadings as establishing a direct injury for Rep. Schiff's unlawful interference with Plaintiffs' ability to interact with those third parties. Taking that alternate tack eliminates any "speculation" that Rep. Schiff argues about third parties

not before the Court. *See* Section I.A.1.b), *supra* (discussing Rep. Schiff's interference as a first-party injury). Whichever path this Court takes, Rep. Schiff caused Plaintiffs' injuries.

*First*, for First Amendment injuries, the normal requirement for injury in fact has been relaxed:

> It has long been recognized that the First Amendment needs breathing space and that statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society.

*Broadrick v. Oklahoma*, 413 U.S. 601, 611-12 (1973). As such, this Court should evaluate Rep. Schiff's interference with Plaintiffs' association, speech, and even advocacy-related fundraising under a more deferential standard than, say, the Court would use to evaluate a commercial plaintiff's lost revenue.

*Second*, under the Speech or Debate Clause – the primary basis under which Rep. Schiff seeks to evade responsibility for his actions – the Supreme Court has recognized the collateral impact of congressional investigations:

> Beyond [the direct effect on the subject of a congressional investigation], there is the more subtle and immeasurable effect upon those who tend to adhere to the most orthodox and uncontroversial views and associations in order to avoid a similar fate at some future time. *That this impact is partly the result of non-governmental activity by private persons cannot relieve the investigators of their responsibility for initiating the reaction.*

*Watkins v. United States*, 354 U.S. 178, 197-98 (1957) (emphasis added). "Abuses of the investigative process may imperceptibly lead to abridgment of protected freedoms," *id.*, which this Court should both recognize and enjoin.

*Third*, under general tort law, a person cannot start a stampede and then blame the crowd or the herd for the stampede's damage: "The general rule is that one who is responsible for

disorder in a crowd is liable for injuries suffered by one although the acts of the crowd may have only contributed to the injuries." *Hall v. Macco Corp.*, 198 Cal. App. 2d 415, 424 (Cal. Ct. App. 1961). Rep. Schiff executed a clever – albeit improper – media strategy to damage Plaintiffs and others who share Plaintiffs' viewpoints. This Court should give Rep. Schiff credit for his actions.

### 3.   This Court can redress Plaintiffs' injuries.

Rep. Schiff argues that Plaintiffs cannot prove that the relief requested would redress injuries caused by independent parties not before the Court. *See* Def.'s Memo. at 18-20. His argument fails for several reasons.

- *First*, to the extent that damages were available, Plaintiffs would not need to show that third-party interactive computer services would change their actions if Rep. Schiff withdrew – by the Court's order – from this field. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 187-88 (2000) (penalties can redress injuries); *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 54 (2007).

- *Second*, even if damages were unavailable, an injunction removing Rep. Schiff from this field would redress the first-party injury of his unauthorized interference with Plaintiffs' rights. *See* Section I.A.1.b), *supra*.

- *Third*, Rep. Schiff's failure to follow the proper House procedures for obtaining delegation of the House's investigative power lowers the bar for redressability. *Defenders of Wildlife,* 504 U.S. at 571-72 & n.7; *see also* Section II.C, *infra*.

If the Court were to reject all these argument on redressability, Plaintiffs could obtain redress by bringing in the interactive computer services as defendants, so that they no longer would be independent third parties not before the Court. *See* First Am. Compl. at 7. With those entities joined, Plaintiff AAPS would "allege[] that the [entities] conspired to suppress [AAPS's]

audience and revenues, and succeeded in reducing each," which "suffices for standing purposes." *Freedom Watch, Inc. v. Google Inc.*, No. 19-7030, 2020 U.S. App. LEXIS 16948, at *3 (D.C. Cir. May 27, 2020) (citing *Freedom Watch, Inc. v. Google*, 368 F.Supp.3d 30, 36 (D.D.C. 2019)).

**B.    The Speech and Debate Clause does not insulate Rep. Schiff's *ultra vires* conduct.**

Rep Schiff's claims immunity under the Speech or Debate Clause, under which "for any Speech or Debate in either House, [the Senators and Representatives] shall not be questioned in any other Place." U.S. CONST. art I, § 6, cl. 1. Neither this immunity nor the implied power of the two houses of Congress to investigate in aid of legislation cover Rep. Schiff's actions here.

**1.    The implied legislative power of inquiry is not unlimited.**

Plaintiffs do not dispute that, as entities, the houses of Congress have the implied power to issue subpoenas and investigate, even though the Constitution does not expressly vest them with investigative powers:

> But there is no provision expressly investing either house with power to make investigations and exact testimony to the end that it may exercise its legislative function advisedly and effectively. So the question arises whether this power is so far incidental to the legislative function as to be implied.

*McGrain v. Daugherty*, 273 U.S. 135, 161 (1927). The Supreme Court answered that question affirmatively: "the power of inquiry – with process to enforce it – is an essential and appropriate auxiliary to the legislative function." *Id.* at 174. But this investigative "power is justified solely as an adjunct to the legislative process" and so "is subject to several limitations." *Trump v. Mazars USA, LLP*, Nos. 19-715, 19-760, 2020 U.S. LEXIS 3553, at *24 (July 9, 2020) (interior quotations omitted).

- *First*, the investigation "is valid only if it is related to, and in furtherance of, a legitimate task of the Congress." *Id.* (interior quotations omitted).

- *Second*, the power does not extend to regulatory actions or "law enforcement" because the Constitution vests those powers in other branches of government. *Id.*

- And *third*, the target of a legislative investigation retains its constitutional rights. *Id.* at *24-*25 (citing *inter alia Watkins*, 354 U.S. at 188, 198).

As explained in Section I.B.3, *infra*, Rep. Schiff's actions fail all three of these limitations of the legislature's implied power of investigation.

That the House and Senate have investigative powers, however, does not mean that *each committee* – much less, each Member – of those bodies has such powers. The House's committees do not automatically assume the House's powers, but rather must exercise those powers as delegates, subject to the conditions of the delegation:

> There is no doubt that the subpoena power may be exercised on behalf of Congress by either House and that the subpoenas issued by committees have the same authority as if they were issued by the entire House of Congress from which the committee is drawn. To issue a valid subpoena, however, a committee or subcommittee must conform strictly to the resolution establishing its investigatory powers, and only those parties expressly authorized to sign subpoenas may do so validly.

*Exxon Corp. v. Fed'l Trade Comm'n*, 589 F.2d 582, 592 (D.C. Cir. 1978) (citations omitted); *Watkins.*, 354 U.S. at 201 ("essential premise in this situation is that the House or Senate shall have instructed the committee members on what they are to do with the power delegated to them"); *cf. Raines v. Byrd*, 521 U.S. 811, 820-22 (1997) (subset of members lack the power of the institution). So, while the House and presumably some of its committees would have the power of inquiry that Rep. Schiff invokes, that does not mean that Rep. Schiff has it.

Nothing in the House Rules or a House resolution authorizes individual Members to take such actions or delegates the House's implied investigative authority to individual Members. If Rep. Schiff has that power, then, he has it as an implied power of inquiry vested to individual Members.

### 2. Individual Members do not share in the House's full implied power of inquiry.

When individual Members such as Rep. Schiff operate for personal aggrandizement via press fanfare to regulate in the absence of legislation, this Court should reject their claims of immunity under the Speech or Debate Clause. That Clause has nothing to do with Rep. Schiff's actions here.

While the implied power of Congress can extend to field work by a Member or even by staff, *McSurely v. McClellan*, 553 F.2d 1277, 1286 (D.C. Cir. 1976) (*en banc*), "there are 'finite limits' to the shield erected by the Speech or Debate Clause." *Id.* at 1287. For example, a court must "determine whether the inquiry may fairly be deemed within the Subcommittee's province." *Id.* (interior quotations and alterations omitted). Here, of course, Rep. Schiff was operating on his own, outside of any committee.

The fact that some Members of Congress engage in similar tactics – even that they do so "frequently" – does not insulate any one Member:

> To the extent plaintiffs charge dissemination outside of the Halls of Congress, the federal defendants are not immune to further questioning. "That Senators generally perform certain acts in their official capacity as Senators does not necessarily make all such acts legislative in nature."

*McSurely*, 553 F.2d at 1285 (quoting *Gravel v. United States*, 408 U.S. 606, 625 (1972)). Instead, under *Gravel*, "activities other than literal speech or debate are entitled to the immunity of the Speech or Debate Clause only when they are 'an integral part of the deliberative or

communicative processes by which Members participate in committee and House proceedings.'" *McSurely*, 553 F.2d at 1285-86 (quoting *Gravel*, 408 U.S. at 625) (alterations omitted). Plaintiffs respectfully submit that the Clause does not protect Rep. Schiff's highly publicized agenda to suppress speech and association rights without an integral nexus with legislation.

Rep. Schiff cites four decisions for the proposition that the Speech or Debate Clause protects informal investigations by individual Members or their staffs. None of these cases aid him. Incredibly, he leads with *United States v. Biaggi*, 853 F.2d 89, 102-03 (2d Cir. 1988), in which the court was "unpersuaded … that the [challenged] travel itself should be considered legislative activity." *Id.* at 104. Indeed, the court further held that even an immune partial motive (*e.g.*, investigation) would not stop prosecution for a proscribed alternate or secondary motive (*e.g.*, illegal travel funding). *Id.* Next, he cites *McSurely*, 553 F.2d at 1286, where the Speech or Debate Clause did not shield dissemination of information outside committee or House proceedings: "Such activity, if otherwise actionable under the applicable law … may be subject of a private suit for damages." *Id.* Next, he cites *Jewish War Veterans v. Gates*, 506 F.Supp.2d 30, 57 (D.D.C. 2007), in which the court merely rejected a distinction between informal versus formal gathering of information, focusing instead on whether "the information is acquired in connection with or in aid of an activity that qualifies as 'legislative' in nature" under precedents such as *Brown & Williamson*, 62 F.3d 408, 419 (D.C. Cir. 1995) (Clause "prevent[s] intrusions into the legislative process") (collecting cases). As indicated, Rep. Schiff's information gathering has a *non-legislative* purpose under those precedents. Last, he cites *Pentagen Tech. Int'l, Ltd. v. Comm. on Appropriations*, 20 F.Supp.2d 41, 44 (D.D.C. 1998), which concerned the "use of documents by the committee staff in the course of official business" and the private discovery of those documents from a legislative committee. *Id.* (alterations and internal quotations omitted).

*Pentagen Tech. Int'l* is inapposite to a Member or staffer operating *outside* the committee structure and *outside* the Congress.

### 3. Defendant's actions fall outside the scope of the Speech or Debate Clause.

As indicated in Section I.B.1, *supra*, even investigations by an actual house or committee of Congress face three limitations. *Mazars USA*, Nos. 19-715, 19-760, 2020 U.S. LEXIS 3553, at *24-*25. Rep. Schiff's actions fail each of the three limitations that the Supreme Court identified. Moreover, his latter-day convening of a related committee hearing in the committee he chairs does not retroactively create the type of resolution or rule that would authorize his conduct. *See* Def.'s Memo. at 23-24. If anything, the hearing suggests that Rep. Schiff is now abusing his authority as a committee chair to evade this lawsuit by fabricating a *post hoc* rationale for his earlier misconduct. In any event, "the mere semblance of legislative purpose would not justify an inquiry in the face of the Bill of Rights." *Watkins*, 354 U.S. at 1185. Accordingly, this Court should reject Rep. Schiff's *post hoc* rationale.

### a) Defendant did not have a sufficient legislative purpose.

Rep. Schiff's actions were not tied to *bona fide* legislative activity. Moreover, even if an inquiry to interactive computer services could qualify as legislative, Rep. Schiff's inquiry did not. Orchestrating an inquiry in advance and then marking it with press releases and a coordinated media campaign is not part of any legislative activity. It is a largely publicity stunt. "In no case has [the Supreme] Court ever treated the Clause as protecting all conduct *relating* to the legislative process." *United States v. Brewster*, 408 U.S. 501, 515 (1972) (emphasis in original). Significantly, "distribution … outside of legislative channels is not legislative activity entitled to absolute immunity by force of the Speech or Debate Clause, in the absence of a claim of legislative purpose." *McSurely*, 553 F.2d at 1286. "Although publication might have some

relationship to the legislative process, it was not *integral* to the process." *Biaggi*, 853 F.2d at 102 (emphasis added). Instead, "[s]uch activity, if otherwise actionable under the applicable law … may be subject of a private suit for damages." *McSurely*, 553 F.2d at 1286. This Court should recognize Rep. Schiff's actions for what they are – an attack on viewpoints that he opposed, couched in a media campaign. Alternatively, this Court should allow Plaintiffs to make their case in court.

**b)      Defendant has an impermissible regulatory purpose.**

The purpose and effect of Rep. Schiff's public offensive against Plaintiffs' viewpoints is to regulate the content of speech on interactive computer services that are essential to modern communication. As a Member of Congress, Rep. Schiff lacks the authority to engage in that type of regulatory action.

**c)      Defendant violated constitutional rights.**

The last limit on the congressional power on inquiry is that Congress cannot trammel the rights of the targets of the investigation, *Mazars USA*, Nos. 19-715, 19-760, 2020 U.S. LEXIS 3553, at \*24-\*25, which applies not only to the companies that Rep. Schiff contacted but also to those – like Plaintiffs – injured as a result. "Abuses of the investigative process may imperceptibly lead to abridgment of protected freedoms," and the fact that that result "is partly the result of non-governmental activity by private persons cannot relieve the investigators of their responsibility for initiating the reaction." *Watkins*, 354 U.S. at 197-98.

"The Bill of Rights is applicable to investigations as to all forms of governmental action." *Watkins*, 354 U.S. at 188. This Court should not give a committee – much less an individual Member – "the power to do indirectly what it cannot do directly" by thwarting those rights. *Civil Aeronautics Bd. v. Delta Air Lines, Inc.*, 367 U.S. 316, 328 (1961); *cf. N. Cal. Power Agency v. Fed. Power Comm'n*, 514 F.2d 184, 189 (D.C. Cir. 1975). Even if the House had delegated its

investigative authority *to a committee*, the First Amendment context would require this Court to construe that delegation *narrowly*: "when First Amendment rights are threatened, the delegation of power to the committee must be clearly revealed in its charter." *Watkins*, 354 U.S. at 198 (citing *United States v. Rumely*, 345 U.S. 41 (1953)). Here, by contrast, Rep. Schiff operated as an individual Member, with no delegation. This Court should not read the implied authority of an individual Member to investigate as a license to thwart First Amendment freedoms by conspiring with willing or unwilling third parties.

### C.     Sovereign immunity is coextensive with the Speech and Debate Clause.

Rep. Schiff also raises sovereign immunity as a more general form of immunity, applicable to all federal officers and offices. With respect to injunctive relief, Schiff accepts the complaint's allegation of the historical fact that "at the time that the states ratified the U.S. Constitution, the equitable, judge-made, common-law doctrine that allows use of the sovereign's courts in the name of the sovereign to order the sovereign's officers to account for their unlawful conduct (*i.e.*, the rule of law) was as least as firmly established and as much a part of the legal system as the judge-made, common-law doctrine of federal sovereign immunity. *See, e.g.,* Louis L. Jaffee, *The Right to Judicial Review I,* 71 HARV. L. REV. 401, 433 (1958)." First Am. Compl. at 7-8. Under the officer-suit fiction of *Ex parte Young,* 209 U.S. 123, 160 (1908), it is blackletter law that "suits against government officers seeking prospective equitable relief are not barred by the doctrine of sovereign immunity." A.B.A. Section of Admin. Law & Regulatory Practice, *A Blackletter Statement of Federal Administrative Law*, 54 ADMIN. L. REV. 1, 46 (2002). Rep. Schiff's invocation of sovereign immunity concerns only damages.

With respect to damages, the sovereign immunity afforded a Member of Congress is co-extensive with the protections afforded by the Speech or Debate Clause. In all other respects, Members of Congress are bound by the law to the same extent as other persons. *Davis v.*

*Passman*, 442 U.S. 228, 246 (1979) ("although a suit against a Congressman for putatively unconstitutional actions taken in the course of his official conduct does raise special concerns counseling hesitation, we hold that these concerns are coextensive with the protections afforded by the Speech or Debate Clause"); *cf. Biaggi*, 853 F.2d at 104. Outside the Speech or Debate Clause's protections, "legislators ought generally to be bound by the law as are ordinary persons." *Id.* (internal alterations and quotations omitted). Because the Speech or Debate Clause does not protect Rep. Schiff, *see* Section I.B, *supra*, the common law doctrine of sovereign immunity does not protect him either.

In any event, even if sovereign immunity did protect Rep. Schiff, that would not provide a basis to *dismiss* the complaint because injunctive and declaratory relief would remain available. Instead, sovereign immunity would go only bar the remedy of money damages.

### D.    The FTCA does not bar this action

Rep. Schiff argues – inconsistently – that the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680 ("FTCA"), bars a damages remedy, that Plaintiffs' claims fall outside the FTCA's waiver of sovereign immunity because the claims fall within the FTCA's "discretionary function exemption," 28 U.S.C. § 2680(a), and that Plaintiffs' damages claim must be dismissed under 28 U.S.C. § 2675(a) for failure to exhaust an FTCA remedy that – as Rep. Schiff argues – Plaintiffs do not have. All three of his FTCA-based arguments are wrong.

### 1.    FTCA exhaustion is not required if the FTCA does not apply.

Because the parties agree that the FTCA does not apply, Rep. Schiff's exhaustion claim is misplaced. A plaintiff need not exhaust a claim that it does not have. Nonetheless, Plaintiffs reserve the right to present their claims to the House under the FTCA to avoid Rep. Schiff's arguments under the FTCA. If Plaintiffs file an FTCA administrative claim with the House, they will advise this Court of that filing.

An FTCA plaintiff must present its claims to the relevant federal entity – here, the House – within two years of the events giving rise to the injury, 28 U.S.C. § 2401(b), and then file an FTCA action in court within six months of the denial of the claim. *Id.* Because Rep. Schiff's actions started in 2019, Plaintiffs could still timely press their FTCA claims to the House.

Finally, because the FTCA issue goes to the availability of a damages remedy only and not to the availability of injunctive or declaratory relief under *Ex Parte Young*, the FTCA would not provide a basis for *dismissal* of either of Plaintiffs' two counts – namely, abuse of power and First Amendment – even if the FTCA did apply. For both counts, declaratory and injunctive relief would remain available, even if the FTCA barred damages.

### 2. The FTCA's exclusivity provisions do not bar Plaintiffs' claims.

Rep. Schiff argues that his actions fall under the discretionary function exemption, 28 U.S.C. § 2680(a), which is the first of a list of types of tort actions to which the entire FTCA does not apply: "The provisions of this chapter and section 1346(b) of this title shall not apply." *Id.* § 2680. This list of FTCA exclusions operates as a "double negative" on the FTCA's waiver of sovereign immunity: Immunity is waived generally, but that waiver does not include the specific exclusions listed in § 2680(a)-(n). For three independent reasons, § 2680(a) does not insulate Rep. Schiff from a damages remedy.

*First*, accepting *arguendo* that § 2680(a) applies to Rep. Schiff's actions, that still would not shield him from the First Amendment claims in Count I: "the FTCA's discretionary-function exception does not provide a blanket immunity against tortious conduct that a plaintiff plausibly alleges … flouts a constitutional prescription." *Loumiet v. United States*, 828 F.3d 935, 943 (D.C. Cir. 2016); *id.* at 944 ("FTCA's discretionary-function exception [does not] generally immunize[] allegedly unconstitutional abuses of discretion by the government"). Here, Plaintiffs

plausibly allege that Rep. Schiff's lone-wolf actions outside the committee structure violate the First Amendment, the Due Process Clause, and the separation-of-powers doctrine. *See* First Am. Compl. at 3-7. That is enough to survive a motion to dismiss on jurisdictional grounds: "The inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim[.]" *Verizon Md. Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 638 (2002).

     *Second*, although *Minneci v. Pollard*, 565 U.S. 118, 126 (2012), cites the FTCA for the proposition that one "ordinarily cannot bring state-law tort actions against employees of the Federal Government," *id.* (emphasis omitted) (citing 28 U.S.C. §§2671, 2679(b)(1)), that proposition does not apply to situations to which the FTCA itself does not apply. As indicated, if one of the exceptions to the FTCA's waiver of sovereign immunity in § 2680(a)-(n) applies, it is also true that the shall-not-apply proviso of § 2680 equally applies: "The provisions of this chapter … shall not apply." 28 U.S.C. § 2680. Because FTCA's exclusivity clause is every bit as much a part of "this chapter" (*i.e.*, the FTCA) as the FTCA's exceptions in § 2680(a)-(n), that exclusivity should not apply when the FTCA provides no remedy.

     Although the inapplicability of FTCA exclusivity is obvious from the FTCA's plain language, the same result would flow from the canon against repeals by implication. *Nat'l Ass'n of Home Builders v. Defenders of Wildlife,* 551 U.S. 644, 662 (2007) ("*NAHB*"). Indeed, the "canon [against repeals by implication] applies with particular force when the asserted repealer would remove a remedy otherwise available." *Schlesinger v. Councilman,* 420 U.S. 738, 752 (1975). Under the "clear and manifest" standard, "[w]hen the text of [a statute] is susceptible of more than one plausible reading, courts ordinarily accept the reading that disfavors" unsettling the canon. *Altria Group, Inc. v. Good,* 555 U.S. 70, 77 (2008) (interior quotations omitted). The FTCA clearly is susceptible to a reading that retains any otherwise available and pre-existing

non-FTCA cause of action for injuries that the FTCA excludes. Decisions to the contrary rely on *United States v. Smith*, 499 U.S. 160 (1991), which dealt with whether the FTCA's exclusivity provision prevented an injured Army patient's suit against an Army doctor for alleged medical malpractice that occurred in Italy, thereby displacing a cause of action under the Gonzalez Act, 10 U.S.C. §1089. As the Supreme Court recognized more recently in finding *Smith* non-controlling, "*Smith* does not even cite, let alone discuss, the 'shall not apply' language 'Exceptions' provision." *Simmons v. Himmelreich*, 136 S.Ct. 1843, 1848 (2016). Under the circumstances, Plaintiffs respectfully submit that the FTCA would not bar non-FTCA actions even if § 2680(a) shields Rep. Schiff and the United States from liability under the FTCA itself.

*Third*, and in any event, the FTCA's exclusivity provision, 28 U.S.C. § 2679(b), by its terms does not limit this Court's jurisdiction for two independent reasons.

- With respect to both counts, that exclusivity extends only to a "negligent or wrongful act or omission of any employee of the Government while acting *within the scope of his office* or employment." 28 U.S.C. § 2679(b)(1) (emphasis added). Plaintiffs argue that a Member of Congress does not act within the scope of his or her office when coercing the public (here, interactive computer services) to act against other members of the public. *See Watkins*, 354 U.S. at 198 (*c*ourts must construe delegation of investigative authority *narrowly* in the First Amendment context). Again, that suffices to survive a motion to dismiss on jurisdictional grounds. *See Verizon*, 535 U.S. at 638 (quoted *supra*).

- With respect to the First Amendment claims in Count I, the FTCA's exclusivity does not apply to a "civil action against an employee of the Government … which is brought for a violation of the Constitution of the United States." 28 U.S.C. § 2679(b)(2)(A). While this

leaves open the so-called *Bivens* cause of action discussed in Section I.E, *infra*, it applies

by its terms to any constitutional violation.

Because the FTCA is not exclusive for the claims that Plaintiffs assert, nothing in the FTCA

requires that Plaintiffs proceed under the FTCA.

In sum, while some of Plaintiffs' FTCA arguments would face headwinds from *Smith* and

its progeny – which *Himmelreich* eviscerated – the FTCA does not apply either to constitutional

claims for damages or to any non-damages claims. Given the two-count structure of Plaintiffs'

complaint, there is nothing that the FTCA requires this Court to dismiss: even non-constitutional

claims in Count II could receive declaratory or injunctive relief, notwithstanding the FTCA.

### E.   This Court can fashion *Bivens*-style relief.

Although Plaintiffs have no quarrel with Rep. Schiff's suggestion that a cause of action

under *Bivens v. Six Unknown Fed'l Narcotics Agents*, 403 U.S. 388 (1971), is not available here,

Plaintiffs respectfully submit that that is not the relevant question. Instead, Plaintiffs respectfully

submit that this Court – alone among federal district courts – possesses the unique power to

recognize a *Bivens*-style cause of action against federal officers who inflict injury when acting

unlawfully or beyond their jurisdiction.

By way of background, *Bivens* is simply an exercise of federal courts' purported power to

fashion a remedy for suits within their statutory subject-matter jurisdiction:

> Our authority to imply a new constitutional tort, not expressly
> authorized by statute, is anchored in our general jurisdiction to
> decide all cases "arising under the Constitution, laws, or treaties of
> the United States."

*Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001) (quoting 28 U.S.C. §1331); *accord*

*Schweiker v. Chilicky*, 487 U.S. 412, 420-21 (1988); *Bivens*, 403 U.S. at 398-99 (Harlan, J.,

concurring in the judgment). As the *Bivens* majority made clear, *Bivens* held what *Bell v. Hood*,

327 U.S. 678 (1946), prefigured: "'where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done.'" *Bivens*, 403 U.S. at 396 (quoting *Bell*, 327 U.S. at 684). And *Bell* made clear that the entire enterprise was based on federal-question jurisdiction: "Whether the petitioners are entitled to recover depends upon an interpretation of [the federal-question statute] and on a determination of the scope of the Fourth and Fifth Amendments' protection[.]" *Bell*, 327 U.S. at 684-85. That reads an awful lot into federal question jurisdiction that Congress never intended.

As just described, *Bivens* was wrongly decided under contemporary views of federal-question jurisdiction and the separation of powers: "With the demise of federal general common law, a federal court's authority to recognize a damages remedy must rest at bottom on a statute enacted by Congress, and no statute expressly creates a *Bivens* remedy." *Hernandez v. Mesa*, 140 S.Ct. 735, 742 (2020) (citations omitted).[1] "This problem does not exist when a common-law court, which exercises a degree of lawmaking authority, fleshes out the remedies available for a common-law tort." *Id.* As explained in the following subsections, this Court differs from other federal district courts in its enabling legislation, and that legislation makes this Court in part a common-law court and in part an Article III district court.

Plaintiffs respectfully submit that that difference suffices to empower this Court to allow a *Bivens*-style remedy under this Court's common-law powers. Even if this Court does not agree that it has that power, supplemental jurisdiction to enforce District of Columbia law would get to

---

[1]     While refusing to overturn *Bivens*, the Supreme Court has been reluctant to extend it to new contexts. The scope of *Bivens* is irrelevant here because Plaintiffs rely on this Court's unique statutory jurisdiction, *see* First Am. Compl. at 10-12, not on § 1331 as *Bivens* did.

the same result. *See* 28 U.S.C. § 1367(a). Either way, then, a *Bivens*-style remedy recognized by a common-law court (*i.e.*, not confected like *Bivens* itself from § 1331) is available here.

1.   <u>This Court's common-law powers differ from other federal court's Article III powers.</u>

As the Supreme Court recently acknowledged, the separation-of-powers problem of an Article III court's inferring a cause of action and a damages remedy under § 1331 "does not exist when a common-law court, which exercises a degree of lawmaking authority, fleshes out the remedies available for a common-law tort." *Hernandez*, 140 S.Ct. at 742. As explained in the complaint, Congress gave this Court common-law powers in 1801, Act of Feb . 27. 1801, § 5; 2 Stat. 103, 106, and did not take that power away *vis-à-vis* federal actors in 1970 with the District of Columbia Court Reorganization Act of 1970, PUB. L. NO. 91-358, 84 Stat. 605 (1970) ("DCCRA"); *see also* First Am. Compl. at 10 (quoting Act of Feb . 27. 1801); *Kendall v. United States ex rel. Stokes*, 37 U.S. (12 Pet.) 524, 625 (1838) ("common law, as it was in force in Maryland when the cession was made, remained in force in this district").[2] As with the FTCA's exclusivity clause, the canon against repeal by implication cautions against reading the DCCRA to have eliminating that common-law power over federal actors, *NAHB,* 551 U.S. at 662, which "applies with particular force when the asserted repealer would remove a remedy otherwise available." *Schlesinger,* 420 U.S. at 752. Certainly, the DCCRA did not transfer this Court's pre-1970 common-law and equitable powers of federal actors to the local court system. Either the DCCRA nullified that power *sub silentio* or that power remains with this Court.

---

[2]     Significantly, this Court's unique common law power survived the demise of a general federal common law in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). *See Clark v. Associated Retail Credit Men*, 105 F.2d 62, 63-64 (D.C. Cir. 1939).

The better – and only plausible – reading is that that power remains with this Court, as both the D.C. Circuit and Congress have indicated. *See Ganem v. Heckler*, 746 F.2d 844, 851 (D.C. Cir. 1984); H.R. REP. NO. 94-1656, at 15-16, *reprinted in* 1976 U.S.C.C.A.N. 6121, 6136. As a common-law court, this Court is free to do what the Supreme Court said in *Hernandez* that common-law courts can do: "flesh[] out the remedies available for a common-law tort." *Hernandez*, 140 S.Ct. at 742. If that sounds like a lot to ask of the common law circa 1801, it is not. *See*, *e.g.*, *Mostyn v. Fabrigas*, 98 Eng. Rep. 1021 (K.B. 1774) (recognizing damages action against colonial governor for assault and false imprisonment); *Baltimore Sun Co. v. Mayor & City Council of Baltimore*, 359 Md. 653, 661, 755 A.2d 1130, 1134 (Md. 2000) ("the rules of the common law of England were adopted as the principles which were to direct the proceedings of the provincial government, whether legislative or judicial") (interior quotations and alterations omitted). The enactment of general review statutes like the Administrative Procedure Act in 1946 has left this generation of counsel out of touch with the history of this Court's judicial review, but that history has not gone away. *Chamber of Commerce of the United States v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996).

## 2. Rep. Schiff's attempt to minimize this Court's powers must fail.

Rep. Schiff's attempt to confine this Court's broad common-law authority to mandamus because *Ganem* involved mandamus is absurd. *See* Def.'s Memo. at 33. *Ganem* could have involved any other of this Court's broad powers; the fact that *Ganem* involved one power (mandamus) did not cause all the others to atrophy *sub silentio*. Either all powers survived the enactment of DCCRA or none did. Alternatively, Rep. Schiff perhaps could identify a DCCRA provision that eliminates all prior authority *except* mandamus.

The fact that other courts or decisions did not consider this Court's common-law power to craft *Bivens*-style remedies is irrelevant. Because "cases cannot be read as foreclosing an

argument that they never dealt with," *Waters v. Churchill*, 511 U.S. 661, 678 (1994) (plurality), a decision cannot foreclose an argument it did not consider:

> Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.

*Cooper Indus., Inc. v. Aviall Serv., Inc.,* 543 U.S. 157, 170 (2004) (interior quotation omitted). Put another way, *stare decisis* from a prior decision is inapposite to issues a prior court reached by the prior parties' waiver. *Whole Woman's Health v. Hellerstedt*, 136 S.Ct. 2292, 2320 (2016). Under these various strands of authority, other parties' litigation *mistakes* do not bind future litigants.

## II.   PLAINTIFFS STATE CLAIMS ON WHICH THIS COURT COULD GRANT RELIEF.

In addition to seeking a jurisdictional dismissal, Rep. Schiff also argues that Plaintiffs fail to state a claim on which this Court can grant relief. If the Court reaches these merits issues, that will mean that Plaintiffs prevailed against Rep. Schiff's jurisdictional arguments. Significantly, it will mean that the Speech or Debate Clause does not protect Rep. Schiff's actions outside the power that the House and the Constitution delegate to him as a Member of Congress. Under that scenario, Plaintiffs respectfully submit that this Court must also recognize that Plaintiffs state claims on which this Court can grant relief.

### A.   <u>Plaintiffs state a claim for abuse of power.</u>

At the outset, and assuming *arguendo* that the Court accepts Plaintiffs' jurisdictional arguments, this Court easily can enjoin Rep. Schiff's actions outside his delegated authority to suppress Plaintiffs' First Amendment rights. As an action under *Ex parte Young* for purely injunctive relief, Count II states a claim to enjoin ongoing action beyond the defendant's authority. Rep. Schiff's real dispute with Count II is the status of "abuse of power" as a tort

action for damages. *See* Def.'s Memo. at 32-35. Insofar as his prevailing on his arguments would not warrant *dismissal* of Count II, Plaintiffs respectfully submit that the Court need not rules on Rep. Schiff's failure-to-state-a-claim argument. Instead, this Court should simply deny Rep. Schiff's Rule 12(b)(6) motion without prejudice to his arguing against damages as a remedy on the merits.

### 1.      **Rep. Schiff does not credibly dispute this Court's common-law power to create a tort or tort remedy or the need to do so here.**

Rep. Schiff cites *Jefferies v. District of Columbia*, 917 F. Supp. 2d 10, 57 (D.D.C. 2013), for the proposition that "[t]here is no freestanding, common law cause of action for 'executive abuse of power/authority.'" Def.'s Memo. at 33. There are several relevant differences between this case and *Jefferies*:

- The *Jefferies* plaintiff had an adequate remedy: "if the defendants' abuse of power or authority has harmed plaintiff, the plaintiff may seek recourse through wrongful death, negligence, or § 1983." *Jefferies*, 917 F. Supp. 2d at 57. By contrast, Plaintiffs here have no alternate remedy for Rep. Schiff's abuse of power.

- The court did not *rule out* creating a new tort, if necessary: Given the above-cited existing remedies, "[t]here is no reason to create a new cause of action for this behavior." *Id.* Moreover, the *Jefferies* plaintiff asked this Court to exercise the District of Columbia court system's power to create local torts against local officers. *Jefferies*, 917 F. Supp. 2d at 56. Given that Rep. Schiff has not credibly disputed this Court's *power* to create a tort against federal actors, *see* Section II.A.2, *infra*, the *Jefferies* decision provides Rep. Schiff no basis to avoid review.

- Rep. Schiff is not an executive officer. As explained in Section I.C, *supra*, the immunity afforded a Member of Congress is coextensive with the Speech or Debate Clause.

*Passman*, 442 U.S. at 246 ("although a suit against a Congressman for putatively unconstitutional actions taken in the course of his official conduct does raise special concerns counseling hesitation, … these concerns are coextensive with the protections afforded by the Speech or Debate Clause"). As further indicated, the Speech or Debate Clause does not protect Rep. Schiff's actions here. *See* Section I.B, *supra*. Under the circumstances, "legislators ought generally to be bound by the law as are ordinary persons." *Passman*, 442 U.S. at 246 (internal alterations and quotations omitted). Where the Speech or Debate Clause did not shield dissemination of information outside committee or House proceedings, "[s]uch activity, if otherwise actionable under the applicable law … may be subject of a private suit for damages." *McSurely*, 553 F.2d at 1286. In short, the rules of immunity differ for legislators acting outside the legislative sphere and executive officers.

- *Jefferies* concerned only damages. Even if some or all of Plaintiffs' claims did not qualify for damages, injunctive or declaratory relief would still be available to enjoin Rep. Schiff from using his office for purposes outside his authority. *See Watkins*, 354 U.S. at 198 (*c*ourts must construe delegation of investigative authority *narrowly* in the First Amendment context).

For all these reasons, Jefferies is not controlling here on the abuse-of-power tort that Plaintiffs seek.

## 2.   This Court could create an abuse-of-power tort for federal officers.

Rep. Schiff argues that federal courts should "generally" not create federal torts. Def.'s Memo. at 33-34. As indicated in Section I.E, *supra*, Rep. Schiff does not adequately distinguish *this* federal court from a *general* federal court. Indeed, *Jefferies* cites *Holmes v. Amerex Rent-A-Car*, 710 A.2d 846, 848 (D.C. 1998), for the standard to create new *District of Columbia* torts.

*Holmes* relied on *Clark v. Associated Retail Credit Men*, 105 F.2d 62, 63-64 (D.C. Cir. 1939), as

that court's authority to create District of Columbia torts, *Holmes*, 710 A.2d at 848-49 (quoting

*Clark*). Plaintiffs' argument is that this Court had the unquestioned post-*Erie* authority to create

torts in 1939 in *Clark* and that the DCCRA did not transfer that authority – with respect to

federal actors – when the DCCRA transferred local authority to the new District of Columbia

courts in 1970. Other than focusing on a mandamus decision, Rep. Schiff has not disputed this;

he has ignored it. *See* Section I.E, *supra*.

Rep. Schiff claims that federal courts – and he means general federal courts, not *this*

Court – make federal common law in only few, restricted instances. *See* Def.'s Memo. at 33-34.

(citing *Tex. Indus. v. Radcliff Materials*, 451 U.S. 630, 640 (1981)). As *Radcliff Materials*

explains, general federal courts make common law in two instances:

> These instances are few and restricted and fall into essentially two
> categories: those in which a federal rule of decision is necessary to
> protect uniquely federal interests and those in which Congress has
> given the courts the power to develop substantive law.

*Radcliff Materials*, 451 U.S. at 640. Both instances apply here.

Using either instance, the problem of renegade Members of Congress conspiring with

online social-media giants to suppress disfavored political speech is an urgent and uniquely

federal interest (*i.e.*, First Amendment rights in an increasingly online world). As explained, this

Court's enabling legislation qualifies as an instance where Congress has given this Court the

power to develop substantive law as in as in *Clark*.

## B.   Plaintiffs state a claim under the First Amendment.

Rep. Schiff's arguments against Plaintiffs First Amendment claim lacks merit.

On the theory that his communications are "government speech," Rep. Schiff argues that

Plaintiffs cannot assert a First Amendment claim: "As a speaker, … the government is free to

communicate some viewpoints while disfavoring others, even if it is engaging – to use PETA's words – in 'utter arbitrariness' in choosing which side to defend and which side to renounce." *People for the Ethical Treatment of Animals, Inc. v. Gittens*, 414 F.3d 23, 30-31 (D.C. Cir. 2005), "The First Amendment's Free Speech Clause does not apply to the government as communicator, and it did not restrict the Commission in its decisions about PETA's elephants." *Id.* But Rep. Schiff is not the "government." He is one Member of a 435-member House. And he is not the one who speaks here: the interactive computer services and their users are the speakers. Instead, he is abusing government power and prestige to squelch third-party speech that he disfavors. His actions are outside the scope of his authority and should be enjoined. *See* Section I.B, *supra*.

Rep. Schiff also sets up Plaintiffs' First Amendment claim as a retaliation claim and then shows why Plaintiffs fail to establish retaliation. *See* Def.'s Memo. at 37-38. But Plaintiffs need not speculate what drives Rep. Schiff's actions. He injures Plaintiffs' First Amendment interests and does so without authority. See Section I.B, *supra*. He can – at the least – be enjoined.

### C.     Rep. Schiff's actions inflict procedural and structural injuries.

By operating without the delegated power for his foray into this First Amendment area, Rep. Schiff inflicts procedural and structural violations of the Constitution. *See* First Am. Compl. at 3, 7; Section I.B, *supra*. To the extent that redressability was an issue, these actions lower the bar for showing redressability. For procedural injuries, Article III's redressability and immediacy requirements apply to the *present procedural violation* (which may someday injure a concrete interest) rather than to the concrete future injury. *Defenders of Wildlife,* 504 U.S. at 571-72 & n.7. While not necessary to establish standing, Plaintiffs mention this only for completeness with respect to the redressability analysis for standing.

## CONCLUSION

For the foregoing reasons, this Court should deny Rep. Schiff's motion to dismiss or, in the alternative, grant Plaintiffs leave to amend to cure any deficiencies.

Dated: July 17, 2020                                    Respectfully submitted,

                                                        /s/ Lawrence J. Joseph
Andrew L. Schlafly                                      Lawrence J. Joseph, DC Bar No. 464777
General Counsel                                         Law Office of Lawrence J. Joseph
Association of American Physicians & Surgeons           1250 Connecticut Ave, NW, Suite 700-1A
939 Old Chester Rd.                                     Washington, DC 20036
Far Hills, NJ 07931                                     Tel: 202-355-9452
Tel: 908-719-8608                                       Fax: 202-318-2254
Fax: 908-934-9207                                       Email: ljoseph@larryjoseph.com
Email: aschlafly@aol.com

                                                        *Counsel for Plaintiffs*